IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
COLLIER COUNTY, FLORIDA

BGT GROUP, INC.,                    )
                                   )
                Plaintiff,          )
                                   )    CIVIL ACTION
        vs.                         )
                                   )    Case No. _07-4393-CA_
VULCAN CAPITAL MANAGEMENT,          )
INC., VULCAN POWER GROUP,           )
L.L.C., VULCAN ENERGY               )
SOLUTIONS, L.L.C., VULCAN           )
ADVANCED MOBILE POWER          2:07 -cv- 816 -FtM-34DNF
SYSTEMS, L.L.C. and VULCAN          )
AMPS, L.L.C.,                       )
                                   )
                Defendants.         )
_____/

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, BGT GROUP, INC. ("BGT"), a Florida corporation, by and through its

undersigned counsel, hereby brings the following action and sues Defendants VULCAN

CAPITAL MANAGEMENT, INC., a Delaware corporation, VULCAN POWER GROUP,

L.L.C., a Delaware limited liability company, VULCAN ENERGY SOLUTIONS, L.L.C., a

Delaware limited liability company, VULCAN ADVANCED MOBILE POWER SYSTEMS,

L.L.C., a Delaware limited liability company, and VULCAN AMPS, L.L.C., a Delaware

limited liability company, and alleges as follows:

## I.    GENERAL ALLEGATIONS

1.      This is an action for damages that exceed $15,000, exclusive of interest,

costs, and attorneys' fees, and is therefore within the jurisdictional limits of this Court.

## II.    THE PARTIES

2.      Plaintiff BGT is a Florida corporation with its principal place of business at

200 Aviation Drive North, Suite 4, Naples, FL 34104-3501.

1273175_2.DOC

3.     Defendant Vulcan Capital Management Inc. ("Vulcan Capital") is a Delaware corporation with a principal place of business located at 805 Third Avenue, Floor 17, New York, New York 10022 and a registered agent at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.     Defendant Vulcan Power Group, L.L.C. ("Vulcan Power") is a Delaware limited liability company with a principal place of business located at 805 Third Avenue, Floor 17, New York, New York 10022 and a registered agent at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

5.     Defendant Vulcan Energy Solutions L.L.C. ("VES") is a Delaware limited liability company with a principal place of business located at 150 East 52nd Street, New York, New York 10022 and a registered agent at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.   VES operates a manufacturing facility at 644 Ben Greene Industrial Park Road, Elizabethtown, North Carolina 28337.

6.     Defendant Vulcan Advanced Mobile Powers Systems, L.L.C., ("Vulcan Advanced") is a Delaware limited liability company with a principal place of business located at 150 East 52nd Street, New York, New York 10022-6017 and a registered agent at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.   Vulcan Advanced's manufacturing headquarters is located at 644 Ben Greene Industrial Park Road, Elizabethtown, North Carolina 28337.

7.     Defendant Vulcan AMPS, L.L.C. ("Vulcan AMPS") is a Delaware limited liability company with a principal place of business located at 150 East 52nd Street, New York, New York 10022-6017 and a registered agent at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

1273175_2.DOC

### III.   JURISDICTION AND VENUE

8.     This action arises under the laws of the State of Florida and is within the subject matter jurisdiction of this Court.

9.     This Court has personal jurisdiction over all Defendants under the principles of long-arm jurisdiction as codified at Fla. Stat. § 48.193 for the following reasons:   Defendants conduct and engage in business ventures in Florida, had extensive contacts with the forum state and have otherwise availed themselves of the benefits and protections of its laws; Defendants have caused Plaintiff harm or tortious injury within Florida by acts or omissions taken by Defendants within Florida and outside the state that they reasonably could have foreseen would have an impact in Florida; Defendants have continuous and systematic business contacts with the State of Florida; and Defendants engage in substantial activity within Florida.

10.     Venue is proper in this forum pursuant to Fla. Stat. § 47.051 because the causes of action at issue accrued in Collier County, Florida, BGT's principal place of business, and all Defendants are subject to personal jurisdiction in this forum.

### IV.   NATURE OF THE SUIT

11.     In early 2007, BGT subcontracted to the Defendants, either directly or through its agents, certain technical work arising from its master contract with Arkansas Electric Cooperative Company – specifically the fabrication, assembly, and manufacture of three mobile power trailers and the supply of an electric generator – requiring delivery by June 11, 2007. BGT agreed to subcontract this work to Defendants in reliance upon their representations that they possessed the expertise necessary to supply the generator and fabricate the three mobile power trailers based solely on engineering drawings, design and installation manuals.   BGT later offered assistance from retired

3

U.S. Navy engineers (each with over 20 years experience with the LM2500 gas turbine), which was later refused by Defendants.

12.    Defendants, however, lacked the requisite expertise and, in fact, intended to use this subcontract as a means of stealing BGT's master contract with Arkansas Electric Cooperative Company. Although Defendants accepted and have retained more than $2 million in cash and $1 million in equipment from BGT to perform the contracted-for services, Defendants have failed to complete any of this work and have refused to return any of the money or equipment to BGT.

13.    After causing BGT to miss its deadline under the master contract with Arkansas Electric Cooperative Company, Defendants then approached Arkansas Electric Cooperative Company in an attempt to convince it to terminate its contract with BGT and substitute Defendants as the contracting party, thereby transferring all the profits of the master contract to Defendants.

14.    In sum, Defendants, collectively and jointly, have misled Plaintiff, stolen its property and money and attempted to steal its contract with Arkansas Electric Cooperative Company. Plaintiff has been materially harmed by Defendants' actions and has brought this lawsuit to vindicate its rights.

## V.    **FACTUAL BACKGROUND**

### A.    **BGT & The Vulcan Entities**

15.    BGT is in the business of, among other things, providing aero-derivative gas turbine packages to the power generation, marine and oil-and-gas industries. BGT frequently markets mobile power generation equipment and facilities to these industries to be used in times of national disaster or severe, inclement weather.

4

16.     Defendant Vulcan Capital is in the business of, among other things, providing private equity investment to its related entities and subsidiaries, which include all other Defendants to this matter.

17.     Defendant Vulcan Power holds the assets of several subsidiaries, including Vulcan AMPS and VES, and is a related entity to Vulcan Capital.

18.     Defendant VES is in the business of, among other things, constructing, maintaining, testing, start-up commissioning and providing electrical and mechanical engineering support · for several types of power plants, including mobile power generation facilities.

19.     Defendant Vulcan Advanced is in the business of, among other things, manufacturing power generators for mobile power generation facilities.

20.     Defendant Vulcan AMPS is in the business of, among other things, manufacturing power generators for mobile power generation facilities.   For the purposes of this Complaint, the term "Vulcan Entities" shall collectively refer to Vulcan Capital, Vulcan Power, VES, Vulcan Advanced and Vulcan AMPS.

21.     According to promotional materials created by the Vulcan Entities, the Vulcan Entities have and continue to provide services in various locations, including in Florida.  See Exhibit A (Vulcan Advertising Materials, p. 35).

22.     The Vulcan Entities have purposely availed themselves of the benefits and protections of Florida law.  Vulcan Power, for example, has previously registered to do business as a foreign limited liability company in Florida.  In addition, on June 22, 2007 VES filed a State of Florida Uniform Commercial Code Financing Statement Form UCC-1 with the Florida Secretary of State.  See Exhibit B (Florida Financing Statement).

5

23.     The Vulcan Entities have also been involved in lawsuits in Florida courts, including, but not limited to, the action filed in 2007 entitled Joel C. Adams v. Vulcan Energy Solutions, LLC, Vulcan Advanced Mobile Power Systems, LLC, Vulcan AMPS, LLC, Vulcan Power Group, LLC, Texas MPower Systems, LLC and Vulcan Power Solutions, LLC, Case No. 2007-CA-001130, Circuit Court of the 1st Judicial Circuit, Escambia County, State of Florida, removed to Case No. 3:07-cv-00310-MCR-EMT, United States District Court for the Northern District of Florida, Pensacola Division; and the action entitled Vulcan Energy Solutions, LLC, Vulcan Advanced Mobile Power Systems, LLC and Vulcan Power Group, LLC v. Joel Adams, Case No. 3:06-CV-534-RS-EMT (U.S.D.C. N.D. Fla. 2006).

**B.     BGT Engages The Services of the Vulcan Entities.**

24.     On January 5, 2007, BGT contracted with Arkansas Electric Cooperative Company ("AECC") to fabricate three mobile power generation facilities.  See Exhibit C (January 5, 2007, contract between BGT and AECC) (hereinafter the "AECC-BGT Contract").

25.     Under the AECC-BGT Contract, BGT was required to, among other things supply a Peebles 18MW generator and develop, design, and manufacture three mobile power trailers for delivery to site on June 15, 2007.

26.     To meet its contractually required deadlines, BGT solicited from its Florida offices the services of the Vulcan Entities as well as Globex Power Group, LLC ("Globex").

27.     William Bond, Chief Executive Officer of BGT, conducted all negotiations with the Vulcan Entities relating to the AECC-BGT contract from BGT's offices in

6                                                 1273175_2.DOC

Florida, sending and receiving telephonic and electronic correspondence from the Vulcan Entities at his Naples office.

28.     During these negotiations, Bond advised the agents of the Vulcan Entities that the turbines and power turbines, necessary components of the three mobile power trailers, were unavailable until the middle to latter part of May 2007.

29.     Bond also specifically stated that BGT could not engage the Vulcan Entities unless the Vulcan Entities possessed the expertise necessary to fabricate the three mobile power trailers based solely on the trailers' manuals and diagrams in order to satisfy BGT's obligations under the AECC-BGT contract.

30.     Jerry Campbell, a Senior Vice President of the Vulcan Entities, confirmed and represented to BGT that the Vulcan Entities could and would fabricate the three mobile power trailers without having the complete turbines on location at VES/Vulcan AMPS' North Carolina manufacturing facility until mid to late May 2007, using only their expertise and the trailers' manuals and diagrams.

31.     Mr. Campbell also represented to BGT that the Vulcan Entities could perform the required services and deliver the necessary equipment in working order in time to allow BGT to meet its performance deadlines under the AECC-BGT contract.

32.     Based on these representations, BGT, through its agent, Globex, engaged the services of the Vulcan Entities to assemble, manufacture, and deliver the three mobile power trailers.

33.     Moreover, based on these representations, BGT directly engaged the Vulcan Entities to supply and deliver the Peebles 18MW generator (the "Generator").

34.     During the negotiations between BGT and the Vulcan Entities, the Defendants sought to make oppressive, one-sided terms and conditions a part of any transaction between BGT, Globex, and the Vulcan Entities.

35.     BGT and Globex, however, expressly rejected the Vulcan Entities' proposed terms and conditions, limiting the Vulcan Entities' acceptance to the terms of the purchase orders from BGT and Globex.

**C.     BGT/Globex's Contracts with the Vulcan Entities**

(i)     The Generator Contract

36.     On or about February 21, 2007, BGT contracted with the Vulcan Entities to purchase for $800,000 a Peebles 18MW ("Generator Contract"). See Exhibit D (February 21, 2007, BGT Generator Purchase Order, transmitted to Vulcan AMPS).

37.     Under the Generator Contract's terms, the Vulcan Entities were to deliver a complete and fully functioning Generator on or before June 11, 2007.

38.     Pursuant to the Generator Contract's terms, BGT paid Vulcan AMPS a total of $600,000, consisting of an initial payment of $400,000 – representing fifty percent (50%) of the total contract price of $800,000 – plus an additional payment of 25% of the total contract price, or $200,000, made within 30 days of the contract's execution.

39.     As early as May 23, 2007 and again on June 6, 2007, BGT attempted to tender the remaining $200,000 owed to the Vulcan Entities to complete the Generator Contract and acquire the generator. See Group Exhibit E (May 23, 2007, Letter from Bond, of BGT to Vulcan LLC, Ford Graham & Kevin Davis and June 6, 2007, Email from Bond to Kevin Davis, Chairman of VES).

1273175_2.DOC

40. However, the Vulcan Entities never responded to BGT's repeated attempts to tender the remaining monies owed and complete the contract. To the contrary, the Vulcan Entities steadfastly refused to accept this payment or schedule the delivery of the fully assembled Generator and attempted to re-negotiate the price to above $1,000,000.

41. To date, Vulcan AMPS has failed to deliver the Generator to BGT or accept the remaining monies owed under the Generator Contract.

(ii)   The Mobile Power Trailer Contract

42. Rather than contract with the Vulcan Entities directly to assemble, manufacture, and deliver the three mobile power trailers required under the AECC-BGT Contract, BGT engaged its agent, Globex, to contract with the Vulcan Entities on its behalf.

43. On or about February 23, 2007, Globex contracted with the Vulcan Entities to design, assemble, fabricate, manufacture, and deliver the three mobile power trailers required under the AECC-BGT contract at a contract price of $3.15 million dollars ("the Trailer Contract"). See Exhibit F (February 21, 2007, Globex Power Group Purchase Order #2513A/3269 and Work Scope 323A).

44. Pursuant to the Trailer Contract, the Vulcan Entities were to deliver three complete and fully functioning mobile power trailers on or before June 11, 2007.

45. BGT provided Globex with more than $1.5 million in start-up monies to commence performance under the Trailer Contract.

46. On or about February 26, 2007, Globex wired $1,575,000, monies supplied entirely by BGT, to Vulcan Power at VES' Elizabethtown, North Carolina

9

manufacturing headquarters as a fifty percent (50%) deposit per the Trailer Contract's terms. See Exhibit G (February 26, 2007, Wachovia Funds Transfer Request).

47.     Pursuant to the Trailer Contract, BGT, as the "Buyer" under the Work Scope, provided the following equipment to the Vulcan Entities to enable them to assemble, manufacture, and deliver the three mobile power trailers: a LM2500 Power Turbine, a LM2500 Power Turbine shipping container, a LM2500 Power Turbine to generator high speed coupling, a LM2500 Power turbine to generator high speed coupling shipping container, two (2) LM2500 Engine Mounting Systems and two (2) LM2500 Exhaust Elbows (collectively "the Equipment").

48.     Pursuant to the Trailer Contract, BGT provided the Vulcan Entities with the necessary design drawings and technical installation manuals on or about February 21, 2007.  Such drawings and manuals are designed for owners of the LM2500 turbine, thereby enabling the Vulcan Entities to begin fabrication under the Trailer Contract in advance of the previously negotiated delivery date for the turbines.

49.     As required by the Trailer Contract, BGT continued to provide all necessary equipment for this project in the time-frame specifically negotiated by BGT and the Vulcan Entities before the execution of the Trailer Contract.

50.     Almost immediately, however, the Vulcan Entities proved unable to perform their obligations under the Trailer Contract.

51.     Although the Vulcan Entities specifically represented that they possessed the expertise necessary to assemble, fabricate and deliver the mobile power trailers based solely on the trailers' manuals and drawings, the Vulcan Entities lacked the

10

requisite expertise and could not, in fact, assemble, fabricate and deliver the mobile power trailers based solely on the trailers' manuals and drawings.

52.    Desperate to conceal their incompetence, the Vulcan Entities repeatedly demanded that BGT accelerate its delivery schedule for the turbines, thereby allowing the Vulcan Entities to reverse-engineer the assembly and fabrication of the mobile power trailers.

53.    The Vulcan Entities supported this request for acceleration of delivery by claiming that the manuals and drawings supplied by BGT were the proprietary information of a third party, preventing the Vulcan Entities from referencing or using them.

54.    The manuals and drawings in question, however, are not proprietary information of any third party and are intended for use by the purchasers of the power turbines – such as BGT – for assembly and operation of the turbines.

55.    When BGT refused to accelerate its delivery schedule, explaining that such an acceleration would be impossible and reminding the Vulcan Entities of their prior representations concerning their expertise in using manuals and drawings to assemble and fabricate mobile power trailers, the Defendants created an excuse to avoid the costs of their non-performance.

56.    On April 24, 2007, Bill Oglesby, Director of Operations for VES, sent a change order to BGT, through one of its agents, for two (2) Buyer supplied exhaust elbows totaling $100,500, claiming that the work relating to these exhaust elbows was outside of the Vulcan Entities' contracted-for scope of work. See Exhibit H (April 24, 2007, Email from Bill Oglesby to Jack McGroarty with attached Change Order).

11

57.    The Vulcan Entities also transmitted this change order directly to BGT. See Exhibit I (May 1, 2007, Email from Bill Oglesby to William Bond with attached Change Order).

58.    At this time, the Vulcan Entities informed BGT that the Vulcan Entities would cease all work on the mobile power trailers unless BGT approved this change order.

59.    BGT, however, had previously discussed this specific issue with Jerry Campbell, Senior Vice President of VES, who had informed BGT that the 90 degree rotation modification that was necessary on the exhaust elbows was included in the Vulcan Entities' scope of work.

60.    BGT, therefore, informed the Vulcan Entities of this conversation. See Exhibit J (May 1, 2007, Email from William Bond to Bill Oglesby).

61..   Seizing upon this dispute and refusing to acknowledge their prior acceptance of responsibility for this work, the Vulcan Entities informed BGT that they were demobilizing their work force on the project. See Exhibit K (May 2, 2007, Email from Bill Oglesby to William Bond).

62.    Attempting to salvage the Trailer Contract, BGT acquiesced to the Vulcan Entities' extortive tactics and agreed to accept the change order for the rotation of the elbows. See Exhibit L (May 2, 2007, Email from William Bond to Bill Oglesby).

63.    BGT repeatedly offered to pay for this modification to the exhaust elbows. See Group Exhibit M (May 3 & 9, 2007, Emails from William Bond to Bill Oglesby).

12                                          1273175_2.DOC

64.    The Vulcan Entities, however, never responded to BGT's repeated offers to accept the change order and, upon information and belief, never made the necessary modifications to the exhaust elbows.

65.    Rather than return to work after receiving notice that BGT would accept the change order, the Vulcan Entities never returned to a fully mobilized project status, despite BGT's express and immediate demand that all work resume immediately (see Exhibit L).

66.    On May 11, 2007, BGT contacted Kevin Davis, Chairman of VES, and repeated that BGT did not authorize any work stoppage on the Trailer Contract, demanded technical information needed for other parts of the overall project that the Vulcan Entities were withholding from BGT and put the Vulcan Entities on notice that their continued delay in providing this information was endangering BGT's ability to perform the AECC-BGT contract.  See Exhibit N (May 11, 2007, Email from Bond to Kevin Davis).

67.    Specifically, BGT made the Vulcan Entities aware of the substantial liquidated damages owed by BGT under the BGT–AECC Contract if its delivery schedule was not met, including the timely fabrication and delivery of the three main trailer systems.  See Exhibit L.

68.    Rather than proceeding to perform their obligations under the Trailer Contract, the Vulcan Entities responded with a second change order seeking the amount of $581,983.77 to complete their contracted-for work under the Trailer Contract. See Exhibit O (May 17, 2007, Letter from Kevin Davis to William Bond).

13                                          1273175_2.DOC

69.     Having stopped all work on the Trailer Contract – effectively preventing BGT from complying with its obligations under the AECC-BGT Contract – the Vulcan Entities next attempted to leverage their breach by offering to take the place of BGT in the AECC-BGT Contract, thereby seizing the profits of that contract for themselves.

70.     On or about May 18, 2007, Ken Welch, Start-up Manager for VES, contacted Jonathan Oliver of AECC on behalf of Vulcan Capital Management in an attempt to circumvent BGT's contract with AECC.

71.     Thereafter, Ford Graham, Managing Director of Vulcan Capital Management, directly contacted AECC and attempted to enter into independent negotiations with AECC to perform the AECC-BGT contract.  See Exhibit P (May 18, 2007, Email from Ford Graham to Jonathan Oliver and attached Vulcan Power Point Advertisements)

72.     On May 23, 2007, BGT ordered Globex to terminate the Trailer Contract in response to the Vulcan Entities' continued failure to perform under the Trailer Contract, their refusal to remobilize, their attempt to extort from BGT an additional $500,000 to perform their previously contracted-for duties, and their decision to terminate all communication with BGT and Globex.  See Exhibit Q (May 23, 2007, letter from William Bond to Vulcan LLC, Ford Graham and Kevin Davis).

73.     On May 24, 2007, Globex officially terminated the Trailer Contract.  See Exhibit R (May 24, 2007, Email from Glenn Farley to Kevin Davis).

74.     After the termination of the Trailer Contract, BGT demanded the return of all of the BGT-owned and supplied equipment from the Vulcan Entities.  See Exhibit R, Exhibit E, and Exhibit S (June 13, 2007, Email from Bond to Kevin Davis).

75.     To date, the Vulcan Entities have refused to return any BGT-owned and supplied equipment.

76.     On June 6, 2007, BGT demanded an accounting of the over $2 million deposited with the Vulcan Entities by BGT and Globex (and provided by BGT) for the performance of the Trailer Contract and the Generator Contract. See, e.g., Exhibit E.

77.     To date, the Vulcan Entities have failed to provide the requested accounting of the monies deposited under either the Generator Contract or the Trailer Contract.

78.     Because of the Vulcan Entities' failure to perform the Generator Contract and the Trailer Contract, BGT has been unable to fulfill its contractual obligations under the AECC-BGT contract.

79.     The Vulcan Entities' breach has caused AECC to withhold from BGT liquidated damages in excess of $2 million under the AECC-BGT contract.

80.     On November 1, 2007 Globex assigned any and all rights and claims under the Trailer Contract to BGT. See Exhibit T.

## VI.    CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT - Generator Contract

81.     Plaintiff BGT incorporates herein each and every allegation in paragraphs 1 through 80, above as if fully set forth herein.

82.     On January 5, 2007, BGT contracted with AECC to fabricate three mobile power generation facilities. See Exhibit C.

83.     Under the AECC-BGT Contract, BGT was required to, among other things supply a Peebles 18MW generator and develop, design, and manufacture three mobile power trailers for delivery by June 15, 2007.

84.     On or about February 21, 2007, BGT contracted with the Vulcan Entities to purchase for $800,000 a Peebles 18MW generator ("Generator Contract").   See Exhibit D.

85.     Under the Generator Contract's terms, the Vulcan Entities were to deliver a complete and fully functioning Generator on or before June 11, 2007.

86.     At the time of contracting, BGT explained and the Vulcan Entities understood that the Vulcan Entities' failure to perform the Generator Contract in a timely fashion would expose BGT to substantial liquidated damages under the AECC-BGT contract.

87.     BGT paid the total amount due according to the Generator Contract's terms: 50% at the time of the order and 25% thirty days thereafter for a total of $600,000.

88.     Under the Generator Contract's terms, the remaining 25% of the contract price was due upon delivery of the Generator.

89.     BGT has satisfied all conditions precedent required of it to receive the contracted-for performance from the Vulcan Entities, including repeatedly offering to pay the Vulcan Entities the outstanding balance of $200,000 owed under the Generator Contract.

90.     The Vulcan Entities, however, materially breached the Generator Contract by failing and refusing to deliver the Generator on or before June 11, 2007.

91.     As a direct and proximate result of the Vulcan Entities' breach of the Generator Contract, BGT has suffered actual damages in an amount greater than $15,000.

92.     There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice. Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate law and making them jointly and severally liable for the breaches and debts of the others.

## COUNT II
## BREACH OF CONTRACT – Trailer Contract

93.     Plaintiff BGT incorporates herein each and every allegation in paragraphs 1 through 80 above as if fully set forth herein.

94.     On January 5, 2007, BGT contracted with AECC to fabricate three mobile power generation facilities. See Exhibit C.

95.     Under the AECC-BGT Contract, BGT was required to, among other things supply a Peebles 18MW generator and develop, design, and manufacture three mobile power trailers for delivery by June 15, 2007.

96.     BGT engaged its agent, Globex, to contract with the Vulcan Entities to assemble, manufacture, and deliver the three mobile power trailers required under the AECC-BGT Contract.

97.     On or about February 23, 2007, Globex contracted with the Vulcan Entities to design, assemble, fabricate, manufacture, and deliver the three mobile power

1273175_2.DOC

trailers required under the AECC-BGT contract at a contract price of $3.15 million (the "Trailer Contract").  See Exhibit F.

98.    Pursuant to the Trailer Contract, the Vulcan Entities were to deliver three complete and fully functioning mobile power trailers on or before June 11, 2007.

99.    At the time of contracting, BGT explained and the Vulcan Entities understood that the Vulcan Entities' failure to perform the Trailer Contract in a timely fashion would expose BGT to substantial liquidated damages under the AECC-BGT contract.

100.    BGT satisfied all conditions precedent to the Vulcan Entities' performance of the Trailer contract by paying the Vulcan Entities, through its agent Globex, the total amount due according to the Trailer Contract's terms – $1.575 million (50% of the total contract price) at the time of the order – and supplying the "Buyer Supplied Components" as required by the Work Scope in the timeframe originally set out in the Trailer Contract.

101.    The Vulcan Entities, however, breached the Trailer Contract by failing to fabricate the mobile power trailers, failing to deliver the mobile power trailers and refusing to fabricate or deliver the mobile power trailers on or before June 11, 2007.

102.    As a direct and proximate result of the Vulcan Entities' breach of the Trailer Contract, BGT has suffered actual damages in an amount greater than $15,000.

103.    On November 1, 2007, BGT and Globex entered into an Assignment under which all rights and claims of Globex under the Trailer Contract were assigned to BGT.  See Exhibit T.

1273175_2.DOC

104. BGT, therefore, possesses any and all rights and claims to pursue the Vulcan Entities for the damages resulting from the breach of the Trailer Contract caused BGT or Globex.

105. There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice. Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate law and making them jointly and severally liable for the breaches and debts of the others.

**COUNT III**
**BREACH OF THIRD PARTY BENEFICIARY CONTRACT – Trailer Contract**

106. Plaintiff BGT incorporates herein each and every allegation in paragraphs 1 through 80, above as if fully set forth herein.

107. On January 5, 2007, BGT contracted with AECC to fabricate three mobile power generation facilities. See Exhibit C.

108. Under the AECC-BGT Contract, BGT was required to, among other things supply a Peebles 18MW generator and develop, design, and manufacture three mobile power trailers for delivery on June 15, 2007.

109. BGT engaged its agent, Globex, to contract with the Vulcan Entities to assemble, manufacture, and deliver the three mobile power trailers required under the AECC-BGT Contract.

110. Before the Vulcan Entities entered into an agreement with Globex relating to the mobile power trailers, representatives of the Vulcan Entities negotiated the terms

19

of the contract with William Bond, President of BGT, and were aware that the contract primarily and directly benefited BGT.

111. On or about February 21, 2007, Globex contracted with the Vulcan Entities to design, assemble, fabricate, manufacture, and deliver the three mobile power trailers required under the AECC-BGT contract at a contract price of $3.15 million as provided for under the Trailer Contract. See Exhibit F.

112. The Vulcan Entities agreed to the terms of the Trailer Contract, having a clear intent and understanding that BGT would supply all necessary equipment and monies for purposes of completing the project.

113. At all times material, the Vulcan Entities clearly and manifestly intended that the Trailer Contract primarily and directly benefit BGT.

114. BGT, therefore, constitutes an intended third party beneficiary of the Trailer Contract and has an independent right to recover any damages caused to it by the Vulcan Entities' breach.

115. Pursuant to the Trailer Contract, the Vulcan Entities were to deliver three complete and fully functioning mobile power trailers on or before June 11, 2007.

116. At the time of contracting, BGT explained and the Vulcan Entities understood that the Vulcan Entities' failure to perform the Trailer Contract in a timely fashion would expose BGT to substantial liquidated damages under the AECC-BGT contract.

117. BGT satisfied all conditions precedent to the Vulcan Entities' performance of the Trailer Contract by paying the Vulcan Entities, through its agent Globex, the total amount due according to the Trailer Contract's terms – $1.575 million (50% of the total

1273175_2.DOC

contract price) at the time of the order – and supplying the "Buyer Supplied Components" as required by the Work Scope in the timeframe originally set out in the Trailer Contract.

118. The Vulcan Entities, however, breached the Trailer Contract by failing to fabricate the mobile power trailers, failing to deliver the mobile power trailers and refusing to fabricate or deliver the mobile power trailers on or before June 11, 2007.

119. As a direct and proximate result of the Vulcan Entities' breach of the Trailer Contract, BGT has suffered actual damages in an amount greater than $15,000.

120. There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice. Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate law and making them jointly and severally liable for the breaches and debts of the others.

## COUNT IV
## UNJUST ENRICHMENT

121. Plaintiff BGT incorporates herein each and every allegation in paragraphs 1 through 10, and 15 through 23 above, as if fully set forth herein. This action is pleaded in the alternative.

122. Plaintiff BGT furnished monies and various pieces of equipment to the Vulcan Entities for a generator and fabrication of three mobile power systems.

123. The Vulcan Entities voluntarily accepted the monies and equipment.

124. The Vulcan Entities realized and appreciated the value of the equipment and monies, and the Vulcan Entities retained control of both monies and equipment.

21                                    1273175_2.DOC

125. The Vulcan Entities have received the benefit of the monies and equipment of BGT and have been unjustly enriched thereby.

126. BGT demanded return of said monies and equipment from the Vulcan Entities.

127. The Vulcan Entities refused to account for the use of the monies and equipment, refused to return monies and equipment and refused to perform or otherwise refund such benefits.

128. BGT lacks an adequate remedy at law, and it would be inequitable for the Vulcan Entities to retain the benefits of Plaintiff's monies and equipment.

129. There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice. Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate law and making them jointly and severally liable for the wrongdoing and debts of the others.

## COUNT V
## CONVERSION

130. Plaintiff BGT incorporates herein each and every allegation in paragraphs 1 through 80 above as if fully set forth herein.

131. On or about June 11, 2007, the Vulcan Entities unlawfully converted, for their own use, the following equipment: a LM25000 Power Turbine; a LM2500 Power Turbine shipping container; a LM2500 Power Turbine to generator high speed coupling; a LM2500 Power turbine to generator high speed coupling shipping container; two (2)

LM2500 Engine Mounting Systems and two (2) LM2500 Exhaust Elbows, which was then the property of the Plaintiff, BGT, collectively having a value in excess of $2 million.

132.   The Vulcan Entities, on demand of BGT, have refused to deliver the property converted by Defendants and have ever since refused to do so.

133.   Instead, the Vulcan Entities have repeatedly attempted to sell BGT's equipment to third parties.

134.   There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice. Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate law and making them jointly and severally liable for the breaches, torts and debts of the others.

## COUNT VI
## ACCOUNTING

135.   Plaintiff BGT incorporates herein each and every allegation in paragraphs 1 through 80 above as if fully set forth herein.

136.   This is an action for accounting.

137.   There exists a confidential or fiduciary relationship between BGT and the Vulcan Entities based upon two contracts for services related to the fabrication of the three main trailer systems and the purchase of a Peebles 18MW generator.

138.   Pursuant to these contracts, BGT, either directly or through its agent Globex, provided the Vulcan Entities with more than $2 million.

139.   The records of the Vulcan Entities reflecting transactions made by the Vulcan Entities in reference to the more than $2 million provided to the Vulcan Entities

by BGT are exclusively in the Vulcan Entities' control, preventing BGT from determining the extent to which the Vulcan Entities' actions have injured BGT.

140.   BGT, therefore, is entitled to an accounting of the Vulcan Entities' actions in relationship to BGT and business records thereof from February 2007 until the present.

141.   BGT has repeatedly requested an accounting from the Vulcan Entities; however, the Vulcan Entities have refused to account to Plaintiff.

142.   BGT has no adequate remedy at law, because without an accounting from the Vulcan Entities, BGT cannot ascertain whether, and to what extent, the Vulcan Entities misappropriated the funds provided by BGT pursuant to the terms of the Generator Contract and the Trailer Contract.

143.   There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice. Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate law and making them jointly and severally liable for the breaches, torts and debts of the others.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**

144.   Plaintiff BGT incorporates herein each and every allegation in paragraphs 1 through 80 above as if fully set forth herein.

145.   The Vulcan Entities intentionally and improperly interfered with BGT's contractual relationship with AECC by disseminating false and misleading information regarding BGT's efforts and operations relating to the fabrication of the three mobile

24

power generation facilities with the intent to induce or otherwise cause AECC to terminate its contract with BGT and to enter into a new contract with the Vulcan Entities.

146.   The Vulcan Entities had knowledge of BGT's contractual relationship with AECC before their attempts to induce or otherwise cause AECC to terminate its contract with BGT.

147.   The Vulcan Entities had no justification and/or privilege which would permit them to contact AECC directly.

148.   All actions taken by the Vulcan Entities were done willfully, maliciously and without legal justification or excuse.  Moreover, the Vulcan Entities took these actions with the intent to harm BGT.

149.   BGT has been damaged as a direct and proximate result of Defendants' wrongful and tortious conduct.

150.   There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice.  Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate law and making them jointly and severally liable for the breaches, torts and debts of the others.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP

151.   Plaintiff BGT incorporates herein each and every allegation in paragraphs 1 through 80 above as if fully set forth herein.

152.   The Vulcan Entities intentionally and improperly interfered with BGT's contractual relationship with AECC by disseminating false and misleading information

1273175_2.DOC

regarding BGT's efforts and operations relating to the fabrication of the three mobile power generation facilities with the intent to induce or otherwise cause AECC to terminate its contract with BGT and to enter into a new contract with the Vulcan Entities.

153.   The Vulcan Entities had knowledge of BGT's contractual relationship with AECC before their attempts to induce or otherwise cause AECC to terminate its contract with BGT.

154.   This solicitation of business, coupled with the Vulcan Entities' provision of misleading and disparaging information regarding BGT, constitutes an intentional and unjustified interference with the relationship between BGT and AECC.

155.   The Vulcan Entities had no justification and/or privilege which would permit them to contact AECC directly.

156.   All actions taken by the Vulcan Entities were done willfully, maliciously and without legal justification or excuse.  Moreover, the Vulcan Entities took these actions with the intent to harm BGT.

157.   BGT has been damaged as a direct and proximate result of Defendants' wrongful and tortious conduct.

158.   There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice.  Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate law and making them jointly and severally liable for the breaches, torts and debts of the others.

1273175_2.DOC

## COUNT IX
## FRAUDULENT INDUCEMENT

159.   Plaintiff incorporates herein each and every allegation in paragraphs 1 through 80 above as if fully set forth herein.

160.   To induce BGT to enter into the Trailer Contract and Generator Contract, the Vulcan Entities represented to William Bond, CEO of BGT, that they possessed the expertise necessary to assemble, fabricate, and deliver the mobile power trailers based solely on the trailers' manuals and drawings.

161.   The Vulcan Entities represented that the fabrication of the three main trailer systems could be completed by June 11, 2007, despite the turbine delivery in late May.

162.   These representations were false for the following reasons:  the Vulcan Entities lacked the expertise necessary to assemble, fabricate, and deliver the mobile power trailers based solely on the trailers' manuals and drawings; they were unable to perform the promised fabrications without the turbine components; and they did not intend to perform the fabrications until receiving these component parts.

163.   The Vulcan Entities made such false representations to induce BGT to contract with them for the fabrication of three trailer systems and the generator.

164.   At the time that the representations were made, the Vulcan Entities knew that BGT was relying upon their representations as being true in deciding whether to enter into an agreement for fabrication of three trailer systems and delivery of one Generator.

165.   The Vulcan Entities intended BGT to rely upon these representations and thereby to induce BGT to enter into both the Trailer Contract and the Generator

27                                         1273175_2.DOC

Contract and to transfer the fifty percent (50%) and seventy-five percent (75%) deposits and BGT's equipment to Defendants.

166.   BGT, in fact, relied on the Vulcan Entities' representations and transferred to the Vulcan Entities monies totaling over $2 million and equipment with a value in excess of $2 million.

167.   At the time the representations were made, the Vulcan Entities had no intention of fabricating the trailer systems or the generator within the specified time period under the contracts at issue.

168.   BGT has been damaged as a direct and proximate result at Defendants' wrongful and tortuous conduct.

169.   The Vulcan Entities acted with actual knowledge of the wrongfulness of their conduct and the high probability that injury to BGT would result and, despite this knowledge, intentionally made these false representations, withheld BGT's equipment, refused to perform under the Trailer Contract and Generator Contract and attempted to enter into third party negotiations and contracts to sell both the trailers and equipment.

170.   There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice. Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate law and making them jointly and severally liable for the breaches, torts and debts of the others.

1273175_2.DOC

## COUNT X
## CIVIL CONSPIRACY

171.   Plaintiff incorporates herein each and every allegation in paragraphs 1 through 80, as well as in Counts I, II, III, V, VII, VIII and IX above, as if fully set forth herein.

172.   The Vulcan Entities and others undertook the conduct set forth in the foregoing paragraphs of this Complaint in active concert and participation with each other as a part of and in pursuit of a common plan and scheme.

173.   In pursuing the common plan and scheme, Defendants and others have acted to accomplish unlawful purposes through lawful means, lawful purposes through unlawful means and/or unlawful purposes through unlawful means, including but not limited to:

      a.    Breach of Contract;

      b.    Conversion;

      c.    Tortious Interference with a Contractual Relationship;

      d.    Tortious Interference with a Advantageous Relationship; and

      e.    Fraud.

174.   As such, the Vulcan Entities are engaged in an unlawful civil conspiracy.

175.   Among other things, the purpose of the civil conspiracy has been and continues to be to cause BGT to breach its contractual relationship with AECC, thereby allowing the Vulcan Entities to substitute themselves into the AECC-BGT contract and seize its profits for themselves, and to convert the monies, equipment and property of BGT.

176.   The ongoing civil conspiracy has caused and continues to cause irreparable harm and damage to Plaintiff.

1273175_2.DOC

177.  The Vulcan Entities' conduct was willful, wanton, malicious, grossly negligent and outrageous.

## COUNT XI
## REPLEVIN

178.  Plaintiff incorporates herein each and every allegation in paragraphs 1 through 80 above as if fully set forth herein.

179.  This is an action to recover possession of personal property.

180.  A description of the property is as follows: LM25000 Power Turbine, LM2500 Power Turbine shipping container, LM2500 Power Turbine to generator high speed coupling, LM2500 Power turbine to generator high speed coupling shipping container, two (2) LM2500 Engine Mounting Systems, and two (2) LM2500 Exhaust Elbows (collectively "the Property").

181.  At the time of the commencement of the above entitled action and at all times hereinafter mentioned, BGT was the owner of the Property.

182.  To the best of Plaintiff's knowledge, information, and belief, the value of the Property is in excess of $2 million.

183.  The Property is wrongfully detained by the Vulcan Entities who are in actual or constructive possession of the same.

184.  The Vulcan Entities came into possession of the Property pursuant to the agreed upon terms of the Trailer Contract entered into by Globex and Defendants as reflected by Globex Power Group Purchase Order #2513A/3269 and Work Scope 323A dated February 23, 2007. See Exhibit D.

185.  Due to the Vulcan Entities' failure to perform, BGT and Globex terminated the Trailer Contract.

30                                              1273175_2.DOC

186.   BGT has made a demand on the Vulcan Entities to return the BGT-owned Property.

.187.   As of the date of the filing of this action, the Vulcan Entities have failed to satisfy BGT's demand for return of the Property and continue to hold the Property in their possession.

188.   The Vulcan Entities' actions in refusing to return the Property are intentional and malicious and undertaken in order to wrongfully deprive BGT of its Property.

189.   By reason of such wrongful detention of the Property by the Vulcan Entities, BGT has sustained damages in an amount in excess of $15,000.

190.   The Property has not been taken by the Vulcan Entities for any tax, assessment or fine pursuant to law.

191.   The Property has not been taken under an execution or attachment against BGT's property.

## COUNT XII
## DECLARATORY AND SUPPLEMENTAL RELIEF

192.   Plaintiff incorporates herein each and every allegation in paragraphs 1 through 80 above as if fully set forth herein.

193.   This is an action by BGT for declaratory judgment and supplemental relief under Chapter 86, Florida Statutes.

194.   On June 22, 2007, VES caused to be filed a Florida Uniform Commercial Code Financing Statement Form UCC-1 ("Financing Statement") with the Florida Secretary of State claiming an interest in three (3) BGT-VES power trailers and one (1)

31

AC power generator. <u>See</u> Exhibit B (Florida Financing Statement). VES listed BGT as the debtor in said Financing Statement.

195. The three power trailer systems and generator listed in the Financing Statement are owned by BGT.

196. BGT never consented to VES filing the Financing Statement or claiming an interest in the items listed in the Financing Statement.

197. VES has no legal interest and/or rights to the property identified in the Financing Statement.

198. The Financing Statement filed by or on behalf of VES clouds and slanders BGT's title to the subject trailer systems and generator.

199. BGT is in doubt as to its rights and obligations, and there is a bona fide dispute with respect to the filing of the Financing Statement as it relates to the obligations and rights of the parties regarding the "BGT-VES power trailers" and "AC power generator" referenced in the Financing Statement. Pursuant to § 86.021, Fla. Stats., BGT is in doubt about the existence or nonexistence of the parties' rights, obligations, legal relationships and equitable relationships.

200. There is a bona fide dispute between the parties regarding the UCC-1 Financing Statement, and the rights between and among the parties related thereto. Pursuant to Chapter 86, Fla. Stats., including § 86.021, Fla. Stats., BGT is entitled to declaratory judgment from this Court resolving such doubt and declaring the respective rights of the parties and status with respect to UCC-1 Financing Statement.

201.   BGT contends that the Financing Statement is erroneous, invalid and not authorized, and that VES is not entitled to an interest in the three power trailer systems and generator.

202.   Upon information and belief, the Vulcan Entities contend that the Financing Statement represents a valid and secured interest in the three power trailer systems and generator.

203.   Upon information and belief, the Vulcan Entities have attempted to sell and/or contend that they can now sell, convey, or otherwise encumber the items described in the Financing Statement.  VES wrongfully is in possession of the items and refuses to return said items to BGT despite demand.

204.   As a result of the foregoing, there now exists between BGT and the Vulcan Entities an actual and bona fide controversy regarding the validity of the Financing Statement and the rights to the property described therein, and the parties are in doubt as to their status, rights and obligations with respect to the Financing Statement.

205.   BGT has no full and adequate remedy at law for the relief sought herein.

206.   As a result, BGT is entitled to a declaration from the Court on the various issues presented and to other supplemental relief as this Court deems just and proper.

207.   There is a unity and identity of interest between the Vulcan Entities such that adherence to the separate existence of these corporations would, under these circumstances, promote injustice.  Accordingly, the Vulcan Entities are the alter egos of one another, preventing them from availing themselves of the protections of corporate

1273175_2.DOC

law and making them jointly and severally liable for the breaches, debts and wrongdoings of the others.

## VII.   RELIEF REQUESTED

WHEREFORE, Plaintiff, BGT Group, Inc., respectfully requests that this Court order the following relief:

1.   Rule in favor of BGT Group, Inc. and against Defendants Vulcan Capital Management, Inc., Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC with request to Plaintiff's claims alleging material breaches of the Generator Contract and Trailer Contract and award Plaintiff in excess of $15,000 in damages, plus interest and costs;

2.   Rule in favor of BGT Group, Inc. and against Defendants Vulcan Capital Management, Inc., Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC with request to Plaintiff's claims alleging Defendants' unjust enrichment and award Plaintiff in excess of $15,000 in damages, plus interest and costs;

3.   Rule in favor of BGT Group, Inc. and against Defendants Vulcan Capital Management, Inc. Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC with request to Plaintiff's claims alleging Defendants' unlawful conversion of Plaintiff's property and award Plaintiff in excess of $15,000 in damages, plus interest and costs;

4.   Rule in favor of BGT Group, Inc. and against Defendants Vulcan Capital Management, Inc., Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan

1273175_2.DOC

AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC with request to Plaintiff's claims alleging Defendants' past tortious interference with the contractual and advantageous business relationship between BGT Group and Arkansas Electric Cooperative Company and award Plaintiff in excess of $15,000 in damages, plus interest and costs;

5.    Rule in favor of BGT Group, Inc. and against Defendants Vulcan Capital Management, Inc., Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC with request to Plaintiff's claims alleging Defendants' fraudulent inducement of Plaintiff to contract with Defendants and award Plaintiff in excess of $15,000 in damages, plus interest and costs;

6.    Rule in favor of BGT Group, Inc. and against Defendants Vulcan Capital Management, Inc., Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC with request to Plaintiff's claims alleging Defendants' civil conspiracy to injure Plaintiff and award Plaintiff in excess of $15,000 in damages, plus interest and costs;

7.    Rule in favor of BGT Group, Inc. and against Defendants Vulcan Capital Management, Inc., Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC for their conscious disregard of BGT Group's rights and award Plaintiff all damages to which it is entitled under Florida law in an amount deemed appropriate by the Court, including punitive damages to the extent permitted under Florida law following Plaintiff making the

requisite showing and the Court granting leave for such damages in accordance with the procedures under Florida law;

8.    Enter orders requiring Defendants Vulcan Capital Management, Inc., Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC to provide a complete, current and accurate accounting of all expenses or use of the funds provided by Plaintiff BGT Group, Inc., either directly or through its agents, to Defendants and a judgment for all monies shown to be due to Plaintiff from the accounting;

9.    Enter orders requiring Defendants Vulcan Capital Management, Inc., Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC to immediately return to Plaintiff the Property wrongfully held by Defendants or, in the case the Property cannot be delivered to BGT Group, Inc. a judgment for the value of this Property as well as damages for its wrongful detention;

10.    Enter orders restraining Defendants Vulcan Capital Management, Inc. Vulcan Power Group, LLC, Vulcan Energy Solutions, LLC, Vulcan AMPS, LLC and Vulcan Advanced Mobile Power Systems, LLC from marketing or selling any of Plaintiff's property, including but not limited to the Peebles 18MW generator;

11.    Enter orders declaring the UCC-1 Financing Statement filed by Vulcan Energy Solutions, LLC invalid, discharging and removing the Financing Statement from the Florida Secured Transaction Registry, and extinguishing any interest Vulcan Energy Solutions, LLC may have in the three BGT-VES power trailer systems and AC power generator; and

1273175_2.DOC

12.    Grant such other and further relief that this Court deems just, equitable and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable by the right of a jury.

COHEN & GRIGSBY, P.C.

By: _____

Jason Hunter Korn
Florida Bar No. 0066117
Brian Anthony Williams
Florida Bar No. 0618683
27200 Riverview Center Blvd., Suite 309
Bonita Springs, Florida 34134
Telephone:  (239) 390-1900
Facsimile: (239) 390-1901
Email: jkorn@cohenlaw.com

Attorneys for Plaintiff
BGT Group, Inc.

Dated:  November 13, 2007

1273175_2.DOC

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint and Demand for Jury Trial, and the facts stated in it are true to the best of my knowledge and belief.


BGT GROUP, INC.

By: William C. Bond, III, its CEO and President, and duly authorized agent


AND

William C. Bond, III, Individually


STATE OF FLORIDA          )
                          ) ss
COUNTY OF LEE             )

THE FOREGOING INSTRUMENT was sworn to under oath and acknowledged before me on this 13th day of November, 2007, by William C. Bond, III, who is either personally known to me or has produced a Florida Drivers License as sufficient identification.

Stephanie Sheldon
Notary Public
Stephanie Sheldon
(Print Name)

(Commission Number)

(SEAL)



STEPHANIE SHELDON
MY COMMISSION # DD 724234
EXPIRES: September 7, 2009
Bonded Thru Notary Public Underwriters

38

1273175_2